Michael Zoldan; AZ Bar No. 028128
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
MZoldan@zoldangroup.com

Attorneys for Plaintiff
Kaytlin Converse

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Kaytlin Converse**, an Arizona resident,<br><br>Plaintiff,<br><br>v.<br><br>**Autobahn Gilbert, LLC d/b/a Audi Gilbert,** a domestic LLC;<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Kaytlin Converse ("**Plaintiff**" or "**Ms. Converse"**), for her Complaint against Defendant Autobahn Gilbert, LLC d/b/a Audi Gilbert ("**Defendant**" or "**Audi Gilbert**") hereby alleges as follows:

## PARTIES

1. Plaintiff is, and at all times relevant hereto was, a resident of Maricopa County, Arizona.

2. Upon information and belief, Defendant Autobahn Gilbert, LLC, is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

## JURISDICTION AND VENUE

3. All acts complained herein occurred in Maricopa County, Arizona, and this

Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

6. Plaintiff was, at all relevant times, an employee of Defendant.

7. At all relevant times, Defendant has continuously been an employer, employing fifteen or more employees within the meaning of Title VII.

8. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

## FACTUAL ALLEGATIONS

9. Ms. Converse commenced employment with Audi Gilbert on or around December 7, 2018 as a receptionist.

10. On December 24, 2018, Ms. Converse planned to go to the San Tan mall after work to finalize her Christmas shopping.

11. When Ms. Converse was preparing to leave work for that evening, Audi Gilbert's Finance Manager, Prakash Makhija, followed her to the Company parking lot and told her that he too was going to San Tan mall to shop for his wife.

12. When Ms. Converse arrived at the mall, she realized that Makhija had, upon information and belief, followed her and was parked behind her in parking lot of the mall.

13.     When Ms. Converse exited her car to enter the mall, Makhija followed her and the two entered the mall at the same time.

14.     As Ms. Converse proceeded from store to store, Makhija continued to follow her.

15.     Ms. Converse first went to a Bath and Body Works store and Makhija followed her into the store.

16.     As she was checking out at the Bath and Body Works store, Makhija insisted on paying for her entire order.

17.     Ms. Converse was already uncomfortable that Makhija followed her to the mall and was accompanying her to stores, which only intensified as Makhija insisted on paying for her items.

18.     As a result, Ms. Converse told Makhija that him paying for her items was completely unnecessary.

19.     Further, Ms. Converse informed Makhija that she had other errands to run and attempted to move in separate directions.

20.     Despite Ms. Converse's attempt to rid herself of Makhija, he continued to follow her into a Victoria's Secret store.

21.     When Ms. Converse and Makhija entered the Victoria's Secret store they initially split into two different segments of the store, with Ms. Converse proceeding to the clothing section and Makhija going into the store's lingerie section.

22.     After Ms. Converse was done shopping and had made her way to the register, Makhija followed her and stood next to her while holding lingerie in his hands.

23.     When it was time for Ms. Converse to pay for her items at checkout, Makhija

placed the lingerie he had selected with Ms. Converse's items and insisted on paying for everything.

24. After leaving the Victoria's Secret store Makhija informed Ms. Converse that the lingerie he had picked out was not for his wife but rather it was for Ms. Converse.

25. Makhija told Ms. Converse that she did not have to pay him back with money but rather he preferred that she repay him with sex by becoming "friends with benefits" with him.

26. When Ms. Converse vehemently rejected Makhija's advances, he refused to take back the lingerie and cautioned Ms. Converse not to tell anyone about what had just occurred.

27. Shortly thereafter, Ms. Converse left the mall in a state of shock and fear.

28. On the next business day, December 26, 2018, Ms. Converse called Audi Gilbert's HR representative, Nancy Rash, and left a voicemail informing Ms. Rash that she needed to speak with her due to the sexual harassment she experienced on Christmas Eve by Makhija.

29. Ms. Rash did not return Ms. Converse's voicemail on December 26, 2018.

30. On December 27, 2018, Ms. Rash called Ms. Converse into a meeting and terminated her employment.

31. The reasons for Ms. Converse's termination, according to Ms. Rash, were that other unidentified coworkers made complaints that Ms. Converse was allegedly engaging in inappropriate conduct at work. Without providing specifics regarding who complained and when they complained, Ms. Rash informed Ms. Converse that her actions allegedly caused male coworkers to complain that Ms. Converse's actions made them

uncomfortable.

32. Ms. Converse unequivocally denies the allegations against her. She was never informed by either of her supervisors that her demeanor at work was ever inappropriate.

33. The unsupportable reasons provided regarding Ms. Converse's termination are pretext and retaliation based on the hostile work environment caused by Makhija and retaliation for Ms. Converse's related complaints.

34. During the termination meeting, Ms. Rash made no effort to investigate Ms. Converse's complaint regarding Makhija.

35. Ms. Converse came to the meeting with the bag of lingerie that Makhija paid for on December 24, 2018.

36. When Ms. Rash was provided with the bag of lingerie by Ms. Converse, Ms. Rash stated that she would return it to Makhija because "he paid for it."

37. Ultimately, instead of investigating and ameliorating a legitimate complaint of sexual harassment, Audi Gilbert opted to retaliate against Ms. Converse for complaining and terminated her employment.

38. Ms. Converse has been unable to procure comparable employment after her termination from Audi Gilbert, despite diligent efforts to do so.

## COUNT I
## SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

39. Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if set forth fully herein.

40. Plaintiff was subjected to verbal and physical conduct of a sexual nature by a director level employee of Defendant.

41. The conduct described above was unwelcome.

42. The conduct described above was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

43. Defendant knew or should have known of the harassment to which Plaintiff was subjected, wholly failed to take proper remedial action, and instead terminated her employment.

44. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

45. Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if set forth fully herein.

46. Plaintiff engaged in protected activity by making complaints to Defendant regarding her sexually hostile work environment.

47. In response to her complaints, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

48. Defendant would not have terminated Plaintiff but for a design to retaliate.

49. As a result, Plaintiff was harmed in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court order such relief as is necessary to make him whole, including, without limitation:

A. Declaring the acts and practices complained of herein are in violation of Title VII;

B. An award of damages for all counts in an amount to be proven at trial;

C. An award of punitive damages in an amount to be proven at trial;

D.  An award of back pay and front pay;

E.  Pre- and post-judgment interest;

F.  Reasonable attorneys' fees, costs and other expenses;

G.  For such other relief this Court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED on April 3, 2019.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Michael Zoldan
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Attorneys for Plaintiff Kaytlin Converse

**VERIFICATION**

Plaintiff Kaytlin Converse declares under penalty of perjury that she has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on her personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.

*Kaytlin M. Converse*
_____
Kaytlin Converse